UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ABRAHAM I. AWWAD,

    Plaintiff,

v.                                            Case No.  8:11-cv-1638-T-24 TBM

LARGO MEDICAL CENTER, INC.,

    Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's Motion to Tax Costs.  (Doc. No. 221). Plaintiff opposes the motion, in part.  (Doc. No. 228).  As explained below, the motion is granted in part and denied in part.

**I.  Background**

On July 25, 2011, Plaintiff Abraham Awwad, a Palestinian doctor, filed suit against Defendant Largo Medical Center ("LMC") for revoking his medical staff privileges.  In his Second Amended Complaint, Plaintiff asserted five claims: (1) a § 1981 claim seeking damages, (2) a § 1981 claim seeking injunctive relief, (3) a fraud claim, (4) a breach of medical staff bylaws claim seeking damages, and (5) a breach of medical staff bylaws claim seeking injunctive relief. (Doc. No. 46).  In response, LMC asserted two counterclaims: (1) defamation (regarding Plaintiff's statements to the media regarding LMC) and (2) breach of the medical staff bylaws. (Doc. No. 50).  In April of 2013, LMC moved to drop the breach of the medical staff bylaws counterclaim.  (Doc. No. 145).

In August of 2013, after a hearing, the Court granted summary judgment on the § 1981 claims and declined to exercise supplemental jurisdiction over the state law claims.  (Doc. No.

215). The Court concluded that Plaintiff did not establish a prima facie case of race discrimination and that LMC had offered a legitimate, non-discriminatory reason for the revocation of Plaintiff's medical staff privileges. Specifically, LMC offered evidence that it revoked Plaintiff's medical staff privileges because Plaintiff did not comply with LMC's non-corrective action requirements that he obtain counseling and attend continuing education. This non-corrective action was required by LMC due to LMC's belief that Plaintiff had engaged in disruptive conduct and had patient care problems.

## II. Motion to Tax Costs

Because LMC prevailed with respect to Plaintiff's § 1981 claims, LMC filed the instant motion to tax costs. In reviewing LMC's motion to tax costs, the Court is mindful of the following:

> A prevailing party may recover costs as a matter of course unless otherwise directed by the Court or applicable statute. Congress has delineated which costs are recoverable under Rule 54(d), Fed.R.Civ.P. The Court has the discretion to award those costs specifically enumerated in 28 U.S.C. § 1920. The Court, however, may not tax as costs any items not authorized by statute. When challenging whether costs are taxable, the losing party bears the burden of demonstrating that a cost is not taxable, unless the knowledge regarding the proposed cost is within the exclusive knowledge of the prevailing party.

Monelus v. Tocodrian, Inc., 609 F. Supp.2d 1328, 1332-33 (S.D. Fla. 2009)(internal citations omitted).

In its motion, LMC seeks $76,906.97 in costs, consisting of the following: (1) $2,350 for service of summons and subpoenas, (2) $40,595.20 for transcripts, (3) $1,627.32 for witness fees, and (3) $32,334.45 for photocopies. Accordingly, the Court will analyze LMC's request for each category of costs.

### A. Overlapping of Claims and Costs

LMC argues that Plaintiff's claims were all inextricably intertwined, and as such, all taxable costs incurred as to its defense of Plaintiff's claims should be recoverable. Plaintiff objects to LMC's characterization. Upon consideration, the Court agrees with LMC that Plaintiff's claims were related and that there was significant overlap in the facts supporting the claims. Therefore, to the extent that the Court can find a sufficient relationship between LMC's proposed taxable costs and Plaintiff's § 1981 claims, the Court will award such costs.

### B. Service of Summons and Subpoenas

LMC seeks $2,350 for the cost of service of summons and subpoenas. This amount is based on a reduction in the amount charged for such service when the amount exceeded $55 (the rate charged by the U.S. Marshal service to effectuate service).

Plaintiff objects to most of the service costs, arguing that the people subpoenaed were not relevant to the issues in this case. To the extent that LMC seeks reimbursement for the cost of non-party discovery of Plaintiff's undergraduate and graduate schools, the Tampa Bay Times, various health insurance companies, and medical centers (other than Northside), it is not clear how such costs are related to Plaintiff's § 1981 race discrimination claims. Perhaps a relationship exists, but LMC has not specifically explained why these costs are related. Therefore, the Court only awards LMC the $55 service cost for the following 10 people and entities:

- 1/10/13 service of subpoena on the corporate representative of Abraham I. Awwad, D.O., P.A.
- 1/11/13 service of subpoena on the corporate representative of Ted Sharp, C.P.A., P.A. (regarding Plaintiff's damages)
- 1/15/13 service of subpoena on Jeina Awwad (Plaintiff's bookkeeper regarding damages)

- 1/24/13 service of subpoena on Northside Hospital
- 1/30/13 service of subpoena on Ted Sharp, C.P.A., P.A.
- 1/31/13 service of subpoena on Jeina Awwad
- 2/8/13 service of subpoena on Abraham I. Awwad, D.O., P.A.
- 4/24/13 service of subpoena on Abraham I. Awwad, D.O.
- 4/24/13 service of subpoena on Frank Crossland, registered agent of Abraham Awwad
- 5/1/13 service of subpoena on Dr. Elias Kanaan (deposed regarding Plaintiff's proposed comparators)

Accordingly, LMC is awarded $550 for the cost of service of subpoenas.

### C. Transcripts

Next, LMC seeks $40,595.20 for the cost of transcripts. LMC seeks recovery of costs related to two types of transcripts: (1) deposition transcripts and (2) transcripts of hearings. To the extent that LMC seeks reimbursement for the cost of transcripts of hearings, LMC has not shown that such transcripts were necessarily obtained for use in this case. Additionally, to the extent that LMC seeks reimbursement for the $38.50 cost of a transcript of a January 11, 2013 "agreement on the record," the Court does not have sufficient information to find this cost to be taxable and will not tax this cost.

With regards to the deposition transcripts, Plaintiff concedes that the following seven depositions were related to his § 1981 claims: Larry Feinman, Jeffrey Steinhoff, Ricardo Requena, Richard Satcher, Charles Nutinsky, Paladugu, and Karen Meno. However, Plaintiff argues that the following nineteen depositions were not related to his § 1981 claims: Ted Sharp, Jeina Awwad, Stanley Goldfarb, Stephen Durham, Joseph Shapiro, Elias Kanaan, Winston Nagin, Nikhi Singh, Paul Steele, Guruswamy Ramamurthy, Lana Bracewell, Patricia McWhorter, Joseph Rosin, Riccardo Bocco, Diane Baxter, Edward Ross, Merrill Krolick, Patricia Procissi, and Ian Ratner.

With regard to the nineteen objected to depositions, the Court finds that LMC has explained the relevancy of these depositions to Plaintiff's § 1981 claims and that these depositions were necessary for use in this case.  Specifically, Sharp, J. Awwad, Durham, and Ratner were deposed regarding Plaintiff's damages.  Goldfarb, Kanaan, Bracewell, McWhorter, Krolick, and Procissi were deposed regarding Plaintiff's proposed comparators.  Nagin, Singh, Bocco, and Baxter were deposed as experts regarding race.  Shapiro and Ross were deposed as nephrology experts, and Plaintiff included Shapiro's declaration as part of his summary judgment opposition regarding his § 1981 claims. (Doc. No. 195, p. 30, 199-4).  Steele was deposed regarding Plaintiff's proposed comparators, and he was a member of the MEC (the MEC was a part of the decision-making process regarding Plaintiff's revocation of staff privileges).  Ramamurthy and Rosin were deposed regarding Plaintiff's proposed comparators, and they were members of the hearing panel (the hearing panel was a part of the decision-making process regarding Plaintiff's revocation of staff privileges).

Plaintiff also objects to certain fees associated with these depositions and argues that such fees are not recoverable.  Accordingly, the Court will address each category of fees charged.

### 1.  Videotaped Depositions

Plaintiff argues that the cost of videotaped depositions is not taxable, because LMC obtained both video and stenographic depositions for many deponents.  In such a situation, the Eleventh Circuit has stated: "[W]hen a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation pursuant to Federal Rule of

Civil Procedure 26(c), it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed." Morrison v. Reichhold Chemicals, Inc., 97 F.3d 460, 465 (11th Cir. 1996).

Plaintiff does not argue that the depositions were not noticed to be recorded by both stenographic and nonstenographic means, nor does he argue that he raised an objection at the time. Instead, he argues that LMC must explain why it was necessary to obtain both types of transcripts. However, the Court believes that the proper inquiry is: (1) whether the depositions were noticed to be recorded by both stenographic and nonstenographic means, (2) whether Plaintiff objected at the time, and (3) whether the depositions (not the type of recording) was necessary to the case. See, e.g., Wood v. Green, 2010 WL 1380154, at *3 (N.D. Fla. Mar. 31, 2010). Under this inquiry, the cost of both video and stenographic depositions are recoverable in this case. However, Plaintiff correctly argues that video synchronization costs are not taxable. See Cardinale v. Southern Homes of Polk County, Inc., 2008 WL 2199273, at *1 (M.D. Fla. May 27, 2008); Tampa Bay Water v. HDR Engineering, Inc., 2012 WL 5387830, at *19 (M.D. Fla. Nov. 2, 2012); Waste Services, Inc. v. Waste Management Inc., 2007 WL 1174116, at *4 (M.D. Fla. April 18, 2007).

### 2. Shipping, Rough Drafts, ASCII Format, and Exhibits

Next, Plaintiff correctly argues that shipping costs related to the depositions are not taxable. See Watson v. Lake County, 492 Fed. Appx. 991, 997 (11th Cir. 2012). Likewise, Plaintiff correctly argues that the costs of ASCII copies are not taxable. See Cardinale, 2008 WL 2199273, at *1; Tampa Bay Water, 2012 WL 5387830, at *19. Additionally, the Court concludes that the costs of rough drafts are not taxable. Finally, Plaintiff contends that the cost

of deposition exhibits should not be taxed, but the Court rejects this argument, as the exhibits were necessary in order to get a complete understanding from the transcripts. See id.

### 3. Expedited Transcripts

Next, Plaintiff argues that the cost of expediting transcripts is not taxable. The Court agrees that normally expedited transcripts are a cost that should not be taxed, as they are often for convenience of counsel.[1]  Cardinale, 2008 WL 2199273, at *1; Tampa Bay Water, 2012 WL 5387830, at *19. However, with respect to the expedited transcript costs related to Sharp and J. Awwad's depositions, the Court finds that such costs are taxable, because they were incurred in connection with LMC's partially successful motion to compel. (Doc. No. 108, 122).

### 4. After Hours Charges

Plaintiff makes a passing argument that the $100 after-hours charge for one hour of Shapiro's deposition should not be taxed. Plaintiff, however, fails to fully explain this argument, and as such, the Court overrules this objection.

---

[1] In determining the reduction for the costs of the expedited transcripts for Paladugu, Meno, Bocco, Baxter, Ross, and Procissi, the Court reduced the page rate charged from $6.30 (the expedited rate) to $4.30 (the regular rate) and multiplied the difference by the number of pages. Additionally, the Court notes that LMC made this reduction when seeking the cost of Bracewell's deposition.

### 5. Summary of Deposition Costs to be Taxed

Based on the above, the Court will tax the following deposition costs, totaling $33,254.88:

| Deponent | Requested Amount | Reduction | Taxable Amount |
|---|---|---|---|
| Plaintiff: 1/11/13 | $ 1,340.34 | $ (60.00) | $ 1,280.34 |
| Plaintiff: 1/10/13 | $ 1,485.69 | $ (80.00) | $ 1,405.69 |
| Plaintiff: 4/9/12 | $ 2,282.60 | $ (140.00) | $ 2,142.60 |
| Feinman: 1/15/13 and 1/16/13 | $ 1,357.10 | $ (10.00) | $ 1,347.10 |
| Feinman: 4/10/13 | $ 2,679.55 | $ (845.00) | $ 1,834.55 |
| Steinhoff | $ 923.90 | $ - | $ 923.90 |
| Requena | $ 1,287.70 | $ - | $ 1,287.70 |
| Satcher | $ 472.20 | $ (162.00) | $ 310.20 |
| Nutinsky | $ 1,113.00 | $ - | $ 1,113.00 |
| Paladugu | $ 942.15 | $ (298.00) | $ 644.15 |
| Meno | $ 2,069.40 | $ (656.00) | $ 1,413.40 |
| Sharp | $ 2,552.50 | $ (206.00) | $ 2,346.50 |
| J. Awwad | $ 1,604.50 | $ (172.00) | $ 1,432.50 |
| Goldfarb: 2/15/13 | $ 1,677.29 | $ (528.54) | $ 1,148.75 |
| Goldfarb: 2/15/13 | $ 822.50 | $ (140.00) | $ 682.50 |
| Goldfarb: 2/13/13 | $ 1,277.13 | $ (201.00) | $ 1,076.13 |
| Durham | $ 1,881.03 | $ (607.53) | $ 1,273.50 |
| Shapiro | $ 1,534.95 | $ (100.00) | $ 1,434.95 |
| Kanaan | $ 646.10 | $ (40.00) | $ 606.10 |
| Nagin | $ 1,494.65 | $ (80.00) | $ 1,414.65 |
| Singh | $ 1,354.82 | $ (60.00) | $ 1,294.82 |
| Steele: 2/11/13 | $ 436.35 | $ (6.00) | $ 430.35 |
| Steele: 2/11/13 | $ 195.00 | $ - | $ 195.00 |
| Ramamurthy | $ 665.25 | $ - | $ 665.25 |
| Bracewell | $ 720.20 | $ (15.00) | $ 705.20 |
| McWhorter | $ 476.40 | $ (12.00) | $ 464.40 |
| Rosin | $ 432.90 | $ (162.00) | $ 270.90 |
| Bocco | $ 831.00 | $ (260.00) | $ 571.00 |
| Baxter | $ 677.85 | $ (204.00) | $ 473.85 |
| Ross | $ 1,587.60 | $ (504.00) | $ 1,083.60 |
| Krolick & Procissi | $ 1,799.60 | $ (458.00) | $ 1,341.60 |
| Ratner | $ 640.70 | $ - | $ 640.70 |

### D. Witness Fees

Next, LMC seeks $1,627.32 for witness fees, consisting of the following: (1) $189.72 for J. Awwad, (2) $62.60 for Sharp, and (3) $1,375 for Durham for two days of expert depositions. Plaintiff argues that none of these costs should be taxable, because these witnesses were not necessary for LMC's success on summary judgment. The Court rejects this argument and has already found that these witnesses were relevant to Plaintiff's § 1981 claims and their depositions were necessarily obtained for use relating to those claims.

Next, Plaintiff argues that the requested witness fees exceed the amount allowable under 18 U.S.C. § 1821, which proves for a $40 per day witness fee. Section 1821 also allows for the cost of mileage. The handwritten receipts for J. Awwad and Sharp simply state that the amounts requested are for "witness fee and mileage." (Doc. No. 221-6). There is no documentation regarding the number of miles traveled or the mileage reimbursement rate used. As such, the Court awards witness fees in the amount of $40 each for J. Awwad and Sharp.

With respect to Durham, LMC argues that it should be reimbursed for the total amount that Durham charged to be an expert witness. This argument has no merit, and the reimbursable witness fee for Durham is limited to $40 for each of his two days. See Morrison, 97 F.3d at 463.

### E. Photocopies

Next, LMC seeks $32,334.45 for the cost of photocopies. In connection with the taxation of photocopying costs, the Eleventh Circuit has stated the following:

> Use of information contained in a file is not a prerequisite to finding that it was necessary to copy the file. Rather, . . . in evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue.

9

U.S. E.E.O.C. v. W&O, Inc., 213 F.3d 600, 623 (11th Cir. 2000)(internal citations and quotation marks omitted). Furthermore, the Court is mindful of the following:

> [T]he costs of photocopies are recoverable if the copies were necessarily obtained for use in the case. The party moving for taxation of costs must present evidence regarding the documents copied including their use or intended use. As the prevailing party alone knows the purpose of the copies, it cannot simply make unsubstantiated claims that copies of the documents were necessary. Rather, the prevailing party must provide information regarding the purpose of copies charged so the court will be able to determine the purpose of the copies as well as whether the rates paid for copies were reasonable, and whether the copies made were related to the action at issue. In evaluating whether copies were necessary, the Court does not award costs for copies made merely for counsel's convenience, such as multiple copies of documents. Similarly, general copying costs without further description are not recoverable. The costs associated with copying documents for the purpose of providing them to the court, however, are reimbursable. Likewise, a prevailing party may recover costs of copies produced to opposing counsel. Thus, a party must demonstrate that copies were necessarily obtained for a reimbursable use in the case.

Monelus, 609 F. Supp.2d at 1335 (internal citations and quotation marks omitted).

In support of its request for reimbursement, LMC states the following:

> This case involved an extensive written record, much of which was comprised of confidential patient medical records and physician peer review records, both of which are subject to strict privacy and document control protocols. The costs incurred were necessary to the litigation, including production to Plaintiff in discovery, use at depositions and submission of records to the Court, and are reflected in the invoices attached.

(Doc. No. 221, p. 9-10). However, the documentary support is lacking in sufficient detail for the Court to determine whether the copies were necessarily obtained for use in the case and relate to the § 1981 claims. Therefore, the Court declines to award these costs. See Brooks v. Peer Review Mediation & Arbitration, Inc., 2012 WL 5410405, at *5 (S.D. Fla. Nov. 6, 2012);

Gonzales v. Pasco County Bd. of County Commissioners, 2013 WL 1810820, at *3 (M.D. Fla. April 29, 2013); Gary Brown & Associates, Inc. v. Ashdon, Inc., 268 Fed. Appx. 837, 846 (11th Cir. 2008); Cullens v. Ga. Department of Transportation, 29 F.3d 1489, 1494 (11th Cir. 1994); Dillon v. Axxsys International, Inc., 2006 WL 3841809, at *7 (M.D. Fla. Dec. 19, 2006).

Furthermore, the invoices include amounts for scanning, binders, hole-punching, tabs, CDs, ESI file conversions, OCR, break sheets, mileage, and other non-copying charges. These additional costs extend beyond the scope of copying, and alternatively, are for the convenience of counsel. See Durden v. Citicorp Trust Bank, FSB, 2010 WL 2105921, at *4 (M.D. Fla. April 26, 2010). The Court is not inclined to comb through these documents to do the job that LMC was required to do in the first place—demonstrate that the costs are for photocopies that were necessarily obtained for use in this case to the extent of Plaintiff's § 1981 claims. Therefore, the Court declines to tax any of the requested photocopying costs.

### III. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant's Motion to Tax Costs (Doc. No. 221) is **GRANTED to the extent that** the Court concludes that $ 33,964.88 in costs should be taxed.[2]

(2) Defendant is directed to file an amended bill of costs, consistent with this order, by December 6, 2013, which will be immediately taxed by the Clerk.

**DONE AND ORDERED** at Tampa, Florida, this 27th day of November, 2013.

Copies to: Counsel of Record

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

---

[2] This amount consists of $33,254.88 for transcripts, $550 for service of subpoenas, and $160 for witness fees.

11